MARIA R. HARRINGTON          9072
mharrington@littler.com
LITTLER MENDELSON, P.C.
2050 Main Street, Suite 900
Irvine, CA  92614
Telephone:  949.705.3000
Facsimile:  949.724.1201

Attorneys for Defendant
BCI COCA-COLA BOTTLING COMPANY
OF LOS ANGELES

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| KAHIKINAOKALA M. P. LEE, | CIVIL NO. |
| Plaintiff, | DEFENDANT'S NOTICE OF REMOVAL OF STATE COURT ACTION TO FEDERAL COURT |
| v. | [28 U.S.C. §§ 1332, 1441, AND 1446] |
| BCI COCA-COLA BOTTLING COMPANY OF LOS ANGELES, dba COCA-COLA REFRESHMENTS, JOHN DOES 1-5, JANE DOES 1-5, DOE CORPORATIONS 1-5, DOE LLCS 1-5, DOE PARTNERSHIPS 1-5, DOE NON-PROFIT ORGANIZATIONS 1-5, and DOE GOVERNMENTAL AGENCIES 1-5, | |
| Defendants. | |

PLEASE TAKE NOTICE that Defendant BCI Coca-Cola Bottling Company of Los Angeles (referred to herein as "Defendant") hereby removes the above-captioned action from the Circuit Court of the First Circuit of the State of Hawaii to the United States District Court for the District of Hawaii pursuant to 28 U.S.C. §§ 1332, 1441, and 1446 on the following grounds:

## STATEMENT OF JURISDICTION

1.     This Notice is based upon the original jurisdiction of the federal district court over the parties under 28 U.S.C. § 1332(a) because this matter is between citizens of different states within the meaning of that provision and the amount in controversy requirement is satisfied.

## VENUE

2.     Plaintiff Kahikinaokala M. P. Lee ("Plaintiff") filed this action in the Circuit Court for the First Circuit, State of Hawaii, alleging acts and omissions occurring in the State of Hawaii.  Venue properly lies in the United States District Court for the District of Hawaii pursuant to 28 U.S.C. §§ 91, 1391, and 1441(a).

## PLEADINGS, PROCESS AND ORDERS

3.     On or about March 19, 2015, Plaintiff commenced this action by filing a complaint in the Circuit Court for the First Circuit, State of Hawaii, entitled *Kahikinaokala M. P. Lee v. BCI Coca-Cola Bottling Company of Los*

*Angeles, dba Coca-Cola Refreshments, John Does 1-5, Jane Does 1-5, Doe Corporations 1-5, Doe LLCs 1-5, Does Partnerships 1-5, Doe Non-Profits 1-5, and Doe Governmental Agencies 1-5*, Case No. 15-1-0489-03 ECN (herein referred to as the "Complaint").  Attached hereto as Exhibit "A" is a true and correct copy of the Complaint.   According to the Complaint, Plaintiff was an employee of Defendant.  (Exh. A, Complaint, ¶ 4.)

4.     Plaintiff served the Complaint on Defendant on September 14, 2015, by personally serving a copy of the Summons and the Complaint on Defendant's agent for service of process in Hawaii.  Attached hereto as Exhibit "B" is a true and correct copy of the Summons.  Attached hereto as Exhibit "C" is a true and correct copy of the Service of Process Transmittal.

5.     Pursuant to 28 U.S.C. § 1446(a), the attached exhibits constitute all process, pleadings and orders served upon Defendant or filed or received in this action by Defendant.

## DIVERSITY OF CITIZENSHIP

6.     This action is a civil action over which this Court has original jurisdiction because this matter is between citizens of different states and the amount in controversy requirement is satisfied.

7.     For diversity purposes, a person is a "citizen" of the state in which he or she is domiciled.  *See Kantor v. Wellesley Galleries, Ltd.*, 704 F.2d

1088 (9th Cir. 1983); *LeBlanc v. Cleveland*, 248 F.3d 95, 100 (2d Cir. 2001).  A person's domicile is the place he resides with the intention to remain or to which he or she intends to return.  *See Kanter v. Warner–Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001).  Upon information and belief, Plaintiff is a citizen of the State of Hawaii.  (Exh. A, Complaint, ¶ 1.)

8.     For diversity purposes, a corporation "shall be deemed a citizen of any State by which it has been incorporated and of the State where it has its principal place of business."  28 U.S.C. § 1332(c)(1).

9.     To determine a corporation's principal place of business, courts apply the "nerve center" test, which deems the principal place of business to be the state in which the corporation's officers direct, control, and coordinate the corporation's activities.  *Hertz Corp. v. Friend*, 559 U.S. 77; 130 S. Ct. 1181, 1186; 175 L. Ed. 2d 1029, 1034 (2010).  A corporation's principal place of business will usually be its main headquarters.  *Id.*

10.    Defendant was, at the time of the filing of this action, and remains, a citizen of the State of Delaware and the State of Georgia.  Defendant was incorporated in the State of Delaware, and its main headquarters and principal place of business is in Atlanta, Georgia.  (Declaration of Gloria Bowden, ¶¶ 3-5.)

## AMOUNT IN CONTROVERSY

11.     Plaintiff has not set forth any specific amount of damages she is seeking.  Consequently, Defendant need only establish by a preponderance of the evidence that the amount in controversy exceeds the statutory requirement in order to support a removal.  *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 404 (9th Cir. 1996); *Perez v. Baxter Healthcare Corp.*, 2012 U.S. Dist. LEXIS 160051 (C.D. Cal. 2012).

12.     To measure the amount in controversy, courts first consider whether it is "facially apparent from the complaint that the jurisdictional amount has been satisfied." *Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 377 (9th Cir. 1997).  In measuring the amount in controversy, the Court "must assume that the allegations of the complaint are true and assume that a jury will return a verdict for the plaintiff on all claims made in the complaint." *Kenneth Rothschild Trust v. Morgan Stanley Dean Witter*, 199 F.Supp.2d 993, 1001 (C.D. Cal. 2002) (internal quotations omitted).

13.     If the complaint does not clearly establish the jurisdictional amount, then the Court may consider facts in the removal petition.  *Singer,* 116 F.3d at 377; *see also Valdez v. Allstate Ins. Co.*, 372 F.3d 1115, 1117 (9th Cir. 2004) ("[W]e reiterate that the amount-in-controversy inquiry in the removal context is not confined to the face of the complaint.")

Firmwide:136333838.1 074184.1000

14.    In this case, the allegations of the Complaint make clear that the damages Plaintiff seeks exceed $75,000.  Plaintiff seeks general damages, special damages, including back pay, front pay, and other expenses, damages for intentional infliction of emotional distress, punitive damages, attorneys' fees, costs and interest, including prejudgment interest, and "such other and further relief as is appropriate."  (Exh. A, Complaint, pp. 5-6.)

15.    Plaintiff's Complaint alleges two claims:  (1) violation of state discrimination laws; and (2) infliction of emotional distress.  (Exh. A, Complaint, ¶¶ 21-25.)  The remedies available to a plaintiff who proves such violations include reinstatement, payment of back wages, full reinstatement of fringe benefits and seniority rights, actual damages and attorneys' fees (e.g., Haw. Rev. Stat. § 378-64).  In addition, an analysis of the damages in dispute further supports a finding that the amount in controversy exceeds the jurisdictional threshold of $75,000. *DeAguiar v. Whole Foods Mkt., Inc.*, Civ. No. 12-00100-SOM, 2012 WL 5038330 at *4 (D. Haw. Oct. 16, 2012) (citing *Kroske v. U.S. Bank Corp.*, 432 F.3d 976, 980 (9th Cir. 2005)) ("The amount in controversy includes the amount of damages in dispute, as well as attorney's fees when authorized by statute or contract.")

16.    Plaintiff's employment was terminated on or about October 23, 2014.  As of the date of this Notice, almost a year has passed since Plaintiff's termination.  At the time she was terminated, Plaintiff earned an hourly rate of

$18.12 per hour, or approximately $37,689.60 per year.  Plaintiff's salary over the time since she was terminated until the date of this Notice would have amounted to approximately $36,861.26.  Moreover, if the case proceeds to trial in October 2016, approximately one year from the date of removal, Plaintiff will be seeking a total of 103 weeks of lost wages.  Thus, the back wages potentially available to Plaintiff total $74,757.94, which alone is almost sufficient to satisfy the $75,000 amount in controversy requirement.

17.   Plaintiff also seeks front pay.  (Exh. A, Complaint, p. 6.)   If Plaintiff were to only seek one year of front pay damages, it would increase her damages calculation by $37,689.60, for a total of $112,447.54, which well exceeds the $75,000 threshold.

18.   In addition to back pay and front pay, Plaintiff's Complaint includes a claim for infliction of emotional distress and the prayer for relief includes "general damages," or emotional distress damages.  While it is difficult to estimate a potential award for emotional distress damages, such awards in discrimination and retaliation cases may surpass $75,000 by themselves, separate from other damages also awarded.  In *Kroske v. U.S. Bank Corp.*, 432 F.3d 976 (9th Cir. 2005), cert denied, 127 S.Ct. 157 (2006), the Ninth Circuit upheld the lower court's finding that the amount in controversy had been established.  In reaching its holding, the Ninth Circuit reasoned that the plaintiff's "emotional

distress damages would add at least an additional $25,000 to her claim" where she had only $55,000 in lost wages, thus satisfying the amount in controversy requirement "even without including a potential award of attorney's fees." *Id.* at 980. At a minimum, a similar result is compelled here, as Plaintiff expressly seeks damages for emotional distress and a significantly greater amount of lost wages is at issue. Thus, based on *Kroske* and other employment cases, the emotional distress component of Plaintiff's claims could add at least $25,000 to the amount in controversy.

19.     In addition to compensatory damages, Plaintiff specifically seeks to recover her attorneys' fees. "[W]here an underlying statute authorizes an award of attorneys' fees, either with mandatory or discretionary language, such fees may be included in the amount in controversy." *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1156 (9th Cir. 1998); *see also, Goldberg v. CPC International Inc.*, 678 F.2d 1365 (9th Cir. 1982) (holding that "attorneys' fees can be taken into account in determining the amount in controversy if a statute authorizes fees to a successful litigant"); *Missouri State Life Ins. Co. v. Jones*, 290 U.S. 199, 54 S.Ct. 133, 78 L.Ed. 267 (1933). Attorneys' fees are available as a remedy under the state discrimination laws. Haw. Rev. Stat. § 378-64. Therefore, in determining whether the amount in controversy exceeds $75,000, the Court must consider Plaintiff's potential attorneys' fees.

20.    When considering attorneys' fees, the Court is not limited to the fees accrued at the time of removal.  Rather, "such fees necessarily accrue until the action is resolved.   Thus, the Ninth Circuit must have anticipated that district courts would project fees beyond removal." *Simmons v. PCR Technology*, 209 F.Supp.2d 1029, 1034-35 (N.D. Cal. 2002).  Courts have noted that, in individual employment cases, attorneys' fees alone can often exceed the jurisdictional minimum, especially when a plaintiff's claims, like those here, are unlikely to be immediately resolved.  *Id.* at 1035; *see also Haase v. Aerodynamics, Inc.*, 2009 U.S. Dist. LEXIS 96563, 14-15 (E.D. Cal. Oct. 16, 2009) ("the Court does not address this argument as even a minimal award of attorney's fees would cause the amount in controversy to exceed the jurisdictional minimum").

21.    In this case, litigation of this action through trial would require Plaintiff to incur attorneys' fees that may surpass the $75,000 amount in controversy requirement, by themselves.   For example, using a conservative assumption that Plaintiff would seek fees at a rate of $250/hour, Plaintiff would only be required to establish 300 total hours of attorney work to reach the $75,000 threshold.  If Plaintiff were to prevail at trial, it is likely that Plaintiff would claim more than $75,000 in attorneys' fees.

22.    In addition to the damages described above, Plaintiff also specifically seeks punitive damages, which must be considered in determining

whether the amount in controversy exceeds $75,000.  *See, e.g., Gibson v. Chrysler Corp.*, 261 F.3d 927, 945 (9th Cir. 2001) ("It is well established that punitive damages are part of the amount in controversy in a civil action.").  If Plaintiff were to establish liability for punitive damages, the award of such damages will likely exceed $75,000.

23.    Based upon the pleadings, it does not appear to a "legal certainty that the claim is really for less than" the amount in controversy minimum. *Spielman v. Genzyme Corp.*, 251 F.3d 1, 5 (1st Cir. 2001) (quoting *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288-89, 58 S. Ct. 586, 82 L. Ed. 845 (1938)).   Thus, Defendant has abundantly carried its burden of demonstrating by a preponderance of the evidence that the amount in controversy in this matter clearly exceeds the jurisdictional minimum of $75,000.

24.    For these reasons, this action is a civil action over which this Court has original jurisdiction pursuant to 28 U.S.C. § 1332, and which may be removed by Defendant to this Court pursuant to 28 U.S.C. § 1441 based on diversity jurisdiction.

25.    Defendant does not concede Plaintiff's allegations are true, that her claims have any merit, that all of the above categories of damages are available, or that the foregoing represents an appropriate method for calculating damages.  Defendant provides the foregoing only to demonstrate that the amount in

Firmwide:136333838.1 074184.1000

controversy, based on the relief sought by Plaintiff, plainly exceeds the $75,000 jurisdictional requirement.

## TIMELINESS OF REMOVAL

26.    Under 28 U.S.C. § 1446(b), the notice of removal of a civil action must be filed within 30 days after service of the summons and complaint. *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 354 (1999) (holding that the 30-day removal period runs from the service of the summons and complaint; mere receipt of summons and complaint without service is insufficient to trigger removal period).

27.    Plaintiff caused the Summons and Complaint to be served on Defendant, through their corporate agent, on September 14, 2015.  Defendant has therefore filed this Notice of Removal within 30 days of service of the Summons and Complaint, and this Notice of Removal is timely.

## NOTICE TO PLAINTIFF AND STATE COURT

28.    Contemporaneously with the filing of this Notice of Removal in the United States District Court for the District of Hawaii, written notice of such filing will be given by the undersigned to Plaintiff's Counsel of Record and a copy

Firmwide:136333838.1 074184.1000

of the Notice of Removal will be filed with the Clerk of the Circuit Court for the

First Circuit, State of Hawaii.


Dated:        October 13, 2015            LITTLER MENDELSON, P.C.


                                          By:/s/ Maria R. Harrington
                                             Maria R. Harrington
                                             Attorneys for Defendant
                                             BCI COCA-COLA BOTTLING
                                             COMPANY OF LOS ANGELES

Firmwide:136333838.1 074184.1000